UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

HOLLY JEAN S.,

         **Plaintiff,**

v.

                  20-CV-726

COMMISSIONER OF SOCIAL SECURITY,

        **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. No. 9.  Holly Jean S. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits.  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 5, 7.  For the following reasons, Plaintiff's motion (Dkt. No. 5) is granted, and the Commissioner's motion (Dkt. No. 7) is denied.

## BACKGROUND

On December 21, 2016, Plaintiff filed for a period of disability and Disability Insurance Benefits ("DIB") alleging that she became disabled by depression

and anxiety on February 2, 2016.  Tr. at 137, 140.[1]  Plaintiff's claim was denied at the initial level and she requested review.  Tr. at 63-68.  Administrative Law Judge Roxanne Fuller ("the ALJ") conducted a video hearing on February 26, 2019.  Tr. at 33-55.  Plaintiff, who was represented by counsel, testified as did a vocational expert.  Tr. at 33-55.  On April 17, 2019, the ALJ issued a decision in which she found that Plaintiff was not under a disability as defined by the Act at any time from February 2, 2016, the alleged onset date, through June 30, 2016, the date last insured, and therefore, was not entitled to benefits.  Tr. at 15-28.  The Appeals Council denied Plaintiff's request for review making the ALJ's decision final.  Tr. at 1-6.  This action followed.  Dkt. No. 1.

## **LEGAL STANDARD**

**Disability Determination**

A person making a claim for Social Security benefits bears the ultimate burden of proving disability throughout the period for which benefits are sought.  *See* 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982).  The claimant is disabled only if she shows that she is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; *see Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 4.

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Congress places the burden upon the claimant to establish disability by requiring her to "furnish such medical and other evidence of the existence [of disability] as the Commissioner . . . may require." 42 U.S.C. § 1382c(a)(3)(H)(i). The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner. 20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

The Commissioner has established a five-step sequential evaluation for adjudicating disability claims set forth at 20 C.F.R. § 416.920. The claimant has the burden at the first four steps. The Commissioner has the burden at the fifth step of demonstrating that the claimant can perform other work existing in significant numbers in the national economy, but the burden of proving disability is always on the claimant. *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Section 405(g) limits the scope of the Court's review to

two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. See Green-Younger v. Barnhart, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. Brault v. Comm'r of Soc. Sec., 683 F.3d 443, 447-48 (2d Cir. 2012) (citing Dickinson v. Zurko, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. See Perez v. Chater, 77 F.3d 41, 46-47 (2d Cir. 1996); Conlin ex rel. N.T.C.B. v. Colvin, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

**DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of February 2, 2016, through her date last insured of June 30, 2016. Tr. at 18. The ALJ concluded at step two that Plaintiff's depression, anxiety, and bipolar disorder were severe impairments. Tr. at 18. At step three, she concluded that Plaintiff did not have an impairment or combination of impairments which met or equaled the Listings, giving special consideration to Listing 12.04 (Depressive, Bipolar, and Related Disorders), and Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders). Tr. at 18-20.

The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: only occasional exposure to moving mechanical parts; occasional operation of a motor vehicle; occasional exposure to unprotected heights; able to perform routine and repetitive tasks; no interaction with the public; and only occasional interaction with co-workers and supervisors. Dkt. No. 21-25.

The ALJ found that through the date last insured Plaintiff was unable to perform any past relevant work. Tr. at 26. Relying on the VE's testimony, the ALJ found at step five that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including the jobs of salvage laborer, lab

5

equipment cleaner, and packager.  Tr. at 27.  Accordingly, the ALJ determined that Plaintiff had not been under a disability at any time from February 2, 2016 through June 30, 2016.  Tr. at 27.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 5, 7.  Among other things, Plaintiff argues that the ALJ relied on her own interpretation of the medical data after rejecting all of the medical opinion evidence of record, except for that of the consulting examiner C. Butensky, who found that there was insufficient evidence to make a disability determination.  This Court agrees and finds that remand is warranted.

Plaintiff's record contains multiple opinions from her counselor Tracey Sherman, Licensed Mental Health Counselor ("LMHC"), whom Plaintiff began seeing in June of 2015.  Ms. Sherman stated on numerous occasions that Plaintiff had disabling mental impairments that precluded work.  For example, on September 21, 2018, Ms. Sherman completed a "Medical Source Statement (Psychiatric)" in which she opined that Plaintiff had marked or "serious" limitations in her ability to appropriately deal with stress, and "concentrate, persist and maintain pace."  Tr. at 359.  She also opined Plaintiff had moderate or "more than slight" limitations in her ability to interact with others; use good judgment; adapt and manage herself; effectively function independently; consistently behave in a stable manner; behave predictably and reasonably; and function reliably.  Tr. at 359-360.  She also stated Plaintiff's psychiatric symptoms would cause her to be off-task for at least 50% of the time in an 8-hour block

of time and she was likely to be absent from work more than 4 days per month as a result of the symptoms of her impairments or treatment.  Tr. at 360. She explained, "Holly struggles to stay focused on tasks which increases her intrusive thoughts, anxiety and feelings of worthlessness."  Tr. at 360.

Ms. Sherman also completed an affective disorder medical source statement on September 21, 2018.  Tr. at 361.  At that time, she indicated Plaintiff continuously had depressive symptoms of anhedonia or pervasive loss of interest in almost all activities, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking.  Tr. at 361.  She also indicated Plaintiff intermittently had manic syndrome symptoms of pressure of speech, flight of ideas, decreased need for sleep, and easy distractibility.  Tr. at 361.  Ms. Sherman opined Plaintiff's symptoms resulted in marked restriction of daily activities; difficulties of concentration, persistence or pace resulting in her frequent failure to complete tasks; and repeated episodes of decompensation, each of an extended duration.  Tr. at 361.  She explained, "Holly struggles with daily living skills due to mental health symptoms.  She has changed medications [and] psychiatrists to explore options to no avail.  Holly at times is not able to leave the house without having an anxiety attack."  Tr. at 362.

Ms. Sherman also completed an anxiety-related disorder questionnaire on September 21, 2018.  Tr. at 363.  She indicated Plaintiff experiences anxiety as the "predominant disturbance."  Tr. at 363.  She indicated Plaintiff had recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring at least once per week.  Tr. at 363.

7

Ms. Sherman opined Plaintiff had marked restriction of activities of daily living and marked difficulties in maintaining social functioning.  Tr. at 364.  She explained, "Holly does not feel she is able to function with normal daily activities but would prefer to stay in bed[,]" and her "[a]nxiety symptoms increased markedly in social settings."  Tr. at 364.  She lastly opined Plaintiff's symptoms resulted in an inability to function independently outside the area of the home, and explained, "Holly does not feel confident in her ability to function/drive her vehicle at times without her spouse present (recent manifestation)."  Tr. at 364.

On February 20, 2019, Ms. Sherman completed a mental residual functional capacity questionnaire.  Tr. at 352.  By this point, Ms. Sherman had treated Plaintiff for a total of 43 sessions.  Tr. at 352.  Due to insurance costs, their sessions were currently monthly, but Plaintiff was seeing another counselor biweekly.  Tr. at 352.  Ms. Sherman listed Plaintiff's diagnoses as generalized anxiety disorder and bipolar disorder with depression, resulting in a depressed affect and congruent mood, and explained that Plaintiff's inability to function at her previous levels of employment had significantly impacted her desire to improve.  Tr. at 352.  Ms. Sherman noted Plaintiff had not shown any significant improvements despite changing her medications and adding biweekly therapy sessions with another therapist.  Tr. at 352.

Ms. Sherman indicated Plaintiff's signs and symptoms included: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; blunt, flat, or inappropriate affect; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbance; difficulty thinking or

8

concentrating; pathological dependence and passivity; change in personality; emotional withdrawal or isolation; emotional lability; memory impairment; sleep disturbance; decreased need for sleep; and recurrent severe panic attacks.  Tr. at 353.

       Ms. Sherman opined Plaintiff was unable to meet competitive standards with her ability to remember work-like procedures; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; understand and remember detailed instructions; carry out detailed instructions; interact appropriately with the general public; maintain socially appropriate behavior; and travel in unfamiliar places.  Tr. at 354-355.  Ms. Sherman also opined Plaintiff's impairments or treatment would likely cause her to be absent more than 4 days per month from work.  Tr. at 356.  Based on these findings, Ms. Sherman concluded that Plaintiff was unable to engage in full-time competitive employment on a sustained basis.  Tr. at 356.

       The ALJ gave Ms. Sherman's opinions "little weight" because they were inconsistent with her own treatment notes and with the record evidence.  Tr. at 25.

On February 10, 2017, non-examining consultant C. Butensky, Ph.D. reviewed Plaintiff's records and stated:

> There is insufficient evidence in [the] file to make a disability determination for this claim. It is noted that the available evidence does not indicate allowance level impairment.

Tr. at 59. The ALJ gave this opinion "great weight" because it was consistent with the record.

Although Plaintiff treated with other providers, such as Dr. Wendy Weinstein, Dr. Kalaiselvi Rajendran, and Dr. Rebecca Phillips, the ALJ did not acknowledge any other opinion evidence, noting at various times that "no further treatment records" from a particular practitioner were provided. Tr. at 23. The ALJ also stated that "there was a gap in treatment records of nearly three years between July 2015 and November 2018," despite Plaintiff's testimony that she saw a therapist once per week and another therapist every two weeks. Tr. at 24.

This Court finds that by rejecting Ms. Sherman's opinions and relying solely on an opinion that acknowledged that there was insufficient evidence in the record, the ALJ created an evidentiary gap that she was required to fill before determining Plaintiff's RFC. Where, as here, the ALJ does not give controlling or significant weight to any substantive medical opinion, "it is reasonable to assume that the ALJ must have relied upon the raw medical data to form his own 'common sense' RFC." *Kiggins v. Comm'r of Soc. Sec.*, No. 17-CV-6642-JWF, 2019 WL 1384590, at *5 (W.D.N.Y. Mar. 27, 2019). "[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings" without the benefit of a medical opinion. *Zayas v.*

*Colvin*, 15-CV-6312-FPG, 2016 WL 1761959, at *4 (W.D.N.Y. May 2, 2016).  Although an ALJ has "considerable and constant exposure to medical evidence," he is not "free to set his own expertise against that of a physician who [submitted an opinion] or testified before him."  *Glover v. Astrue*, No. 08-CV-218, 2010 WL 1035440, at *4 (W.D.N.Y. Mar. 18, 2010) (internal citations omitted); *Fioretti v. Saul*, No. 19-CV-248-MJR, 2020 WL 3046097, at *3-4 (W.D.N.Y. June 8, 2020).

Only in rare circumstances, "where the medical evidence shows [a] relatively minor . . . impairment" may an ALJ "render a commonsense judgment about functional capacity . . . without a physician's assessment."  *Gross v. Astrue*, 12-CV-6207-MWP, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014) (internal quotations and citations omitted); *see also Kain v. Colvin*, 14-CV-650-WMS, 2017 WL 2059806, at *3 (W.D.N.Y. May 14, 2017) (recognizing that when the record contains medical findings merely diagnosing the claimant's impairments without relating that diagnosis to functional capabilities, the general rule is that the Commissioner "may not make the connection himself") (citations omitted).

Plaintiff's anxiety, depression, and bipolar disorder do not constitute minor physical impairments that lend themselves to the ALJ's "common sense judgment." Bipolar disorder, in particular, is notoriously difficult to diagnose and treat due to its complexity.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 260 (N.D.N.Y. 2010).  As noted herein, the ALJ concluded that Plaintiff was capable of performing a full range of work at all exertional levels but with numerous nonexertional limitations relating to being around machinery, operating a motor vehicle, working at unprotected heights, performing

11

routine work, and interacting with the public, co-workers and supervisors.  Tr. at 21.  Because this RFC is untethered from any of the medical opinions, it is unclear precisely what the ALJ relied upon in determining these very specific limitations.  *See Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793- JWF, 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019).  This requires remand.

Upon remand, the ALJ is directed to obtain a functional medical assessment, preferably from Dr. Weinstein who treated Plaintiff during the relevant period, or otherwise explain how the RFC is grounded in the medical opinion evidence.  *Jones v. Berryhill*, No. 16-CV-6042 CJS, 2017 WL 2222245, at *8 (W.D.N.Y. May 22, 2017).

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 5) is hereby GRANTED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 7) is DENIED.  This matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.  The Clerk of the Court is directed to this case.

**SO ORDERED.**

DATED:  Buffalo, New York
September 13, 2021

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**